This indictment which you are trying was found at the present term of the Court of General Sessions, and consists of two counts, or charges, the first for the killing of Richard H. Rowe by the prisoner at the bar, by means of a pistol shot, with express malice aforethought, that is, with express design in firing the pistol to take Rowe's life; the second charges the killing of Rowe to have been done in the execution of a design, on the part of the prisoner, as of his own malice aforethought, to take the life of Edward McGaughey. Both these counts charge murder of the *Page 571 
first degree, as the offense of taking Rowe's life; and such, as set forth in the indictment, the offense is. The statute of this State defines murder of the first degree as follows:
"Every person who shall commit the crime of murder with express malice aforethought, in perpetrating or attempting to perpetrate any crime punishable with death, shall be deemed guilty of murder of the first degree, and of felony, and shall suffer death." Rev. Code, pp. 364, 365.
You perceive, therefore, gentlemen, that these two cases of manslaying or homicide, as it is conveniently called, are murders of the first degree, the one where the killing is with express malice aforethought with respect to the victim himself; the other where the victim was not the subject of the malicious purpose, but another person entirely. The homicide in either case is, in law, a deliberately malicious one; and constitutes the crime of murder of the first degree.
The defense made by the learned counsel of the prisoner has a three-fold aspect; either that it was purely in self-defense or in defense of the prisoner's dwelling, or accidental, merely. If he has made out, either by the testtimony of his witnesses, or otherwise by sufficient proof, then the prisoner is entitled to be acquitted of this charge; for the law of the land inflicts no punishment for a homicide committed by a person in, the lawful defense of his person, his family or his possessions, or by pure accident.
This statement makes it necessary that we should describe to you the different kinds of homicide in order that you may clearly distinguish between them. There are homicides that are malicious and such as are not malicious. The latter, or the non-malicious class, are divided into three kinds or descriptions. First, justifiable, second, excusable; third, manslaughter. The former, or the malicious ones, are divided into two kinds; murder of the first, and murder of the second degree.
Justifiable homicide is where an officer takes another's life by unavoidable necessity, without any will, intention, *Page 572 
desire, negligence or inadvertence on his part, and therefore, without blame; as when a sheriff hangs a prisoner in pursuance to the sentence of a Court, and in strict conformity therewith; or where an officer, in due execution of his office, kills a person who assaults or resists him; or where a private person or officer attempts to arrest a man charged with felony and is resisted, and in the endeavor to take him, kills him; or if a felon flee from justice, and in the pursuit be killed, when he cannot otherwise be taken, and other cases not necessary to be stated.
Excusable homicide is that which is committed either first by misadventure or accident; where one is doing a lawful act and unfortunately kills another, as, if a person be at work with a hatchet and the head flies off and kills a bystander; or, if a parent is correcting his child, or a master his apprentice or scholar, the bounds of moderation not fairly exceeded, either in the manner, the instrument, or the quantity of punishment; if an officer in punishing a criminal, within the like bounds of moderation, or within the limits of the law; and in either of these cases death ensues. Or, secondly, in self-defense, which is when one is assaulted upon a sudden affray, and in the defense of his person, where certain and immediate suffering would be the consequence of waiting for the assistance of the law, and there was no other probable means of escape, he kills his assailant. To reduce homicide to this degree, it must be shown that the slayer was closely pressed by the other party and retreated as far as he conveniently or safely could, in good faith, with the honest intent to avoid the violence of the assault. The jury must be satisfied that unless he had killed his assailant he was in imminent and manifest danger, either of losing his own life or of suffering enormous bodily harm. It closely borders on manslaughter, as in both cases it is supposed that passion has kindled and that blows have passed between the parties; but the difference lies in this; that in manslaughter it must appear either that the parties were in mutual combat when the mortal stroke was given, or that the slayer *Page 573 
was not in immediate danger of death; and in homicide by self-defense, it must appear, either that the slayer had not begun to fight or that having begun, he endeavored to decline any further struggle, and afterwards, being closely pressed by his antagonist, he killed him to avoid his own destruction. Homicide is also excusable when committed in defense of the possessions of one's dwelling-house against a trespasser, who having entered, cannot be put out otherwise than by force, and no more force used, and no other instrument or mode is employed than is necessary or proper for that purpose. Manslaughter is the unlawful killing of another, without malice, either express or implied, and is divided into two kinds, voluntary or involuntary. Voluntary manslaughter is where one kills another in the heat of blood; and this usually arising from fighting or provocation. In the former case to reduce the homicide to manslaughter, it must be shown that the fighting was not preconcerted, and that there was not sufficient time for the passion to subside; for in the case of a deliberate fight the slayer is guilty of murder. And though there were not time for the passion to subside, yet if the case be attended with such circumstances as indicate malice in the slayer, he will be guilty of murder. Other illustrations might be given, but they are not necessary. When homicide is committed upon provocation, it must appear that the provocation was considerable, and not slight only in order to reduce the offense to manslaughter, and for this purpose the proof of reproachful words, how grievous soever, or of gestures or actions expressive of contempt or reproach, without an assault, actual or menaced, on the person, will not be sufficient if a deadly weapon be used. Thus the killing has been held to be only manslaughter, though a deadly weapon was used, when the provocation was by pulling the nose, purposely jostling the slayer aside in the highway; or other actual battery. So where one is engaged in doing or committing an act unlawful merely; or a lawful act in a careless or wanton manner, the offense is manslaughter. It is not necessary to give other illustrations. *Page 574 
Malicious homicide embraces only one general crime, that of murder; but there are two grades, or degrees of it; murder of the first, and murder of the second degree. The latter offense is created by our statute passed in 1852, and embraces all homicides which are designated as malicious by the common law, except those committed with express malice aforethought, or in perpetrating or attempting to perpetrate any crime, punishable with death, and they are murders of the first degree.
In order to determine whether a homicide is malicious, or not, you must have your minds informed as to what malice, as the term is employed in law, is.
The term malice is not restricted to spite or malevolence towards the deceased in particular; but it is understood to mean that general malignity and recklessness of the lives and persons of others which proceed from a heart void of a just sense of social duty and fatally bent on mischief. And whenever the fatal act is either committed deliberately or without adequate provocation, the law presumes that it was done with malice; and the person must show from evidence, or by inference from the circumstances of the case, that the offense is of a mitigated character, and does not amount to murder, and all cases of homicide, except those mentioned to you of an officer in the performance of his official duty and in the line of it, c., are presumed in law to be malicious, until the party charged shows that the one committed by him was not. When a homicide is proved to have been committed, the immediate duty devolves upon the prisoner to show that he was not influenced by malice, in law, but committed the act upon sudden heat of passion from adequate provocation, in defense of his person, or that of a member of his family, or of his possession, when the act was necessary for that purpose, or that the killing was purely accidental. If he cannot do this, he must be convicted of one or the other of the degress of murder, and of which of them, depends upon the proof on the part of the prosecution; for, although malice is presumed by law, yet before *Page 575 
a conviction for murder of the first degree can be had at the hands of the jury, it must be shown by the prosecution that the prisoner, at the time of the killing, was actuated by a sedate and deliberate purpose, or formed design, to take the life of the deceased. In doing this it is not necessary to show previous hatred, or ill-will towards the deceased, but only that, at the time the fatal stroke was given, he was influenced by a deliberate purpose to take life. And this deliberateness may be only for a moment; but it must be shown to exist by facts or circumstances. This is the kind of malice necessary to be shown to secure a conviction of murder of the first degree. Murder of the second degree includes all cases where there cannot be proved any act showing a design to take the life of the victim, but there is shown a purpose to commit some act deemed, by law, felony, or some unlawful act not felonious, but attended with such circumstances as show a disregard of any consequences that may follow from it, however fatal they may be.
With this exposition of the law of homicide, it is of course to be presumed that you have a clear understanding of such law; and so understanding, it is your duty to consider the facts of the case in the light of that law, and make up your verdict after a calm review of both.
In this case you have not any difficulty in deciding whether the deceased person, Richard H. Rowe, was killed by the prisoner or not; because by testimony not disputed, he declared himself that he had shot him. At the same time, however, he declared that he did not intend to shoot him but the witness, Edward McGaughey. And we may say to you, gentlemen, that we believe this statement to be true, the absence of all motive on the prisoner's part to take the life of Rowe being apparent. Here then, you have the case of the homicide or killing of one man in the attempt to kill another. Now what the crime is of doing that, you must determine by your verdict. In order so to determine you must decide according to the facts proved before you and the law as we have informed *Page 576 
you of it, what it would have been if executed upon McGaughey. Suppose Rowe had not been present, what would have been Dugan's crime if McGaughey instead of Rowe had been killed. This question you must decide before you can render a verdict. As I have before stated, the pleas of the defendant are, self-defense, defense of his possession, or accident.
With respect to the plea of accidental killing, we are justified in saying to you that you have no evidence that will warrant you in allowing it; and for the plain reason that such a defense is never allowed unless the act from which the fatality results, is perfectly lawful and innocent in itself. To point a loaded weapon at another in an angry manner is itself an assault, which is an unlawful act, and, therefore, death resulting from it is in no sense excusable, but is felonious. Besides the ball from the pistol could not have done the execution in the ease of Rowe which it did unless the weapon had been aimed in the direction where he and McGaughey were standing. How then can an act be called accidental, when it is the natural and probable consequence of pointing a weapon, (a firearm, for example,) in the direction of a person within shooting distance and pulling the trigger. As in this case there is no proof that the pistol was in the habit of going off against the will of its possessor; it must be held, in reason, that the ball was discharged from it by means of the powder in it, and the force applied to the trigger by the prisoner.
We come now to the plea of self-defense upon which the defendant chiefly relies, and defense of possession. As already stated to you, the plea of self-defense does not avail unless the prisoner can show that he was, at the time he took the life of the deceased, in imminent danger of his own life, or of receiving some grievous or enormous bodily harm. Has the prisoner furnished you with any proof that at the time of the shooting, he was in any danger whatever to his life or person? If so, what is it? There are three witnesses who testify to the circumstances *Page 577 
attending the shooting, and they are all who saw them. They are Coleman, McGaughey and Caven. The first states that he saw McGaughey strike at the prisoner in his silting room; that he grazed his breast and stomach; but Dugan fell back so that the blow did not hit him full; that he threw up his hands and had nothing in his hands. As McGaughey struck Dugan he said you son of a bitch; didn't see Rowe at this time; Mrs. Dugan got hold of McGaughey's arm and pulled it back, and as he did so Dugan pulled his pistol from his hip pocket; the witness then went back to the counter in the bar room, looking backward and forward, and as he looked into the sitting room the second time Dugan fired. McGaughey and Caven state, in their testimony, substantially the same facts, that is, that they went in Dugan's sitting room together, that Dugan rushed at McGaughey who repelled him with a push; that Dugan left the room and soon afterwards returned to it, but not till after McGaughey and Rowe had withdrawn to the rear corner of it to converse: and that while there Dugan returned, and without any word or expression, fired his pistol in the direction of McGaughey and Rowe, striking the latter in the temple and killing him very shortly afterwards. There being no dispute about the fact of killing, you are to decide whether the act of discharging that pistol was necessary for the present defense of the prisoner's own person, or that of his dwelling house. Unless it can be shown in a case, where the plea of the prisoner is defense of possession, that he resorted, first, to the usual steps for expulsion, as by the use of moderate means, and never to the ultimate one of taking life until all others failed, he cannot protect himself from the consequence of a felonious homicide. There is no proof that at the time of the shooting, McGaughey was attempting to do anything. Coleman only saw, as he says, the blow of McGaughey's fist that grazed the prisoner's person, and no actual blow of violence upon it. He then saw the prisoner pull out his pistol from his hip pocket, and, being scared himself, he *Page 578 
walked back to the front door of the bar room: that he stopped there a second or two and then came back to the counter, and as he looked into the sitting room the second time, he saw Dugan fire. Taking this to be the only testimony of anything that occurred, can you find from the exposition of the case we have given you, that at that time the person of Dugan was in danger of a mortal stroke or of enormous harm? This is a question for you to decide; and if you cannot do it conscientiously, from the proof made before you, you cannot allow the defendant the benefit of that plea. But then it is your duty to consider the other testimony offered by the State with respect to the homicide. Both McGaughey and Caven stats to you that the first assault made upon the occasion of the homicide was by Dugan himself and that not in the course of an effort to expel McGaughey from his premises, for they do not say, nor does it otherwise appear, by any proof, that Dugan gave any order even to him to leave the premises. On the contrary McGaughey states that when he went into the sitting room with Rowe, who had admitted him to the house, Dugan sprung at him and said "you son of a bitch, you have tried to raise a fuss with me and I will give you enough now." He says that he shoved Dugan back with his open hand saying "you damned fool, I don't want to hurt you," that he (Dugan) then passed into the bar room, and he (the witness) and Rowe then went over into the diagonal corner "of the room; and whilst there conversing, with Row's hands upon his shoulders and his back to the sitting room door, Dugan returned from the bar-room with a pistol which he soon afterward raised and pointing it in the direction of himself and Rowe, fired it off, killing the latter almost immediately. Coleman says that Dugan was at the mantel-piece behind the bar where the pistol was, four or five minutes before he took it away and went to the sitting room door. This would be about the time that, according to the statement of McGaughey, must have been consumed in the conversation between him and the unfortunate deceased *Page 579 
before Dugan re-appeared in the sitting room. Coleman says that Dugan got the pistol before he saw the blow aimed at Dugan by McGaughey and the shot was about 12 seconds afterwards. McGaughey says that time enough elapsed after the assault was made upon him by Dugan for him to retire with Rowe to the rear of the room, and engage in conversation before Dugan returned. This is substantially corroborated by John Caven, who says, however, that when the pistol was first shown he was near Dugan, and finding it leveled so that it might kill him, he said "Hughey, don't do that;" that he thus pointed it fatally in the direction of McGaughey and Rowe, the latter of whom received the ball intended for McGaughey. I say intended for McGaughey, because the prisoner declared to the witness, Whelan, that he shot at McGaughey and killed Rowe. Now, gentlemen, it is your duty to consider the testimony of these witnesses and reconcile it if you can. If you cannot, then you must give your confidence where you think it should rest. Witnesses have testified that McGaughey has a bad reputation for telling the truth, and they would not believe him on his oath. Others, on the contrary, but not so many, though apparently of equal respectability, have testified to you that his reputation for veracity is good, and they would believe him on oath. The law presumes that every man has a good character, which of course, includes that of telling the truth; (for no habitual liar can have a good character;) it is for you to decide, therefore, whether that presumption, and the proof in support of character are overborne by the testimony as to bad character for veracity. But the testimony of McGaughey is fortified by that of Caven, who says he was present in the room where the tragedy happened; that he went there with McGaughey and saw all that occurred. Whether he was there or not is for you to decide; but as his character for telling the truth is unimpeached, and he swears positively that he was there, it ought to have more weight as to that fact, than that of Coleman who was not in the sitting room, but says he did *Page 580 
not see him in the house, because Caven's testimony is of a positive fact and that of Coleman is negative entirely, it being a rule for estimating the value of evidence, that, other things being equal, positive proof is of more importance than negative proof. But you are to judge of the value of all this testimony. The only witnesses of the act of Dugan who can give testimony have sworn to their respective statements before you, your verdict must be rendered, however it may be, upon them and them alone, and the declarations of the prisoner himself, which are in evidence also. Now it is a rule in the trial of cases, that where any statement made by the person on trial and relied upon to convict him is given in evidence, a jury must take all that he said upon that occasion. In this case you must take all that Dugan said when confessing that he committed the act; but you are not bound to believe it all. On the contrary, if you find it contradicted by other proof satisfactory to your minds, you are bound to reject it. He stated to Whalen that "Rowe let McGaughey in and I fired at McGaughey and struck Dick," using his language as given by the witness. Now this would imply that Rowe was shot as he opened the door to let McGaughey in, whereas we do know, from the testimony of Coleman, McGaughey and Caven, that some time had elapsed after Rowe admitted McGaughey, before the fatal shot was fired.
There does not seem to be any evidence whatever before you, if you reject the explanation given by Dugan, that he was acting in defense of his possession, when he killed Rowe; for he made no active effort to prevent McGaughey from coming in, nor did he order him out, or make any effort to expel him after he came in. Now the law of defense of possession is this; a party has the right to resort to any means to prevent another from entering his house, and they may be the extreme means of taking the life if the entrance cannot otherwise be prevented; so if one is in the house of another and is ordered to leave it, and refuse to go, the occupier has a right to expel him: *Page 581 
but before resorting to violent means he must endeavor first to expel him by gentle means; if they are resisted, he may use force enough to overcome the resistance, no matter to what intent such force may go. For every man's dwelling is his castle of defense, and he has a right to enjoy it without molestation from any quarter. But the law is very tender also of human life, and will never allow it to be taken, in defense of person or property, until all reasonable efforts to do it otherwise are exhausted. In a case where a man assailed is not in his own house, he must retreat so far as he safely can before taking the life of his assailant, unless the suddenness of the attack deprive him of power to do so. This, however, does not apply when a man is attacked in his own house; for that is his place of retreat and security and he may instantly kill his assailant if he is attacked suddenly in such a way as to place his own life in peril, or his person in danger of grievous or enormous bodily harm.
We have now, gentlemen, given you the law of tin's case, with such remarks, with respect to the testimony as we thought proper to make; and the ease is now left with you for your determination. The fact of shooting at McGaughey is confessed; the consequence of that act was the killing of Rowe. Dugan is therefore guilty of whatever crime he would have been guilty of if he had killed McGaughey. If you believe from the testimony of the witnesses, and the law as expounded for your enlightenment, he was in danger of his own life or of great bodily harm when he fired; if there were any facts to show that he was endeavoring to expel McGaughey from his house, and being resisted he fired as a necessary means of compelling obedience to his efforts, it would be your duty to acquit him entirely. If, on the contrary, you believe from the testimony that neither of these defenses is available, you should convict him of one or the other of the degrees of murder, and of which one we leave you *Page 582 
to determine upon a review of all the testimony, and recalling the explanation of the law we have made to you.
 Verdict — "Guilty of Manslaughter."